**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROXANNE LAVALLEY,**

                                  **Plaintiff,**                        **8:13-cv-319**
                                                                       **(GLS)**

                   v.

**CAROLYN W. COLVIN,** Acting
Commissioner of Social Security,

                                **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Mark A. Schneider         MARK A. SCHNEIDER ESQ.
57 Court Street
Plattsburgh, NY 12901

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    PETER W. JEWETT
United States Attorney                 Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Roxanne LaValley challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering LaValley's arguments, the Commissioner's decision is reversed and remanded.

## II. Background

On February 1, 2011, LaValley filed an application for DIB under the Social Security Act ("the Act"), alleging disability since August 18, 2010. (Tr.[1] at 46, 128-32.) After her application was denied, (*id.* at 56-61), LaValley requested a hearing before an Administrative Law Judge (ALJ), which was held on April 3, 2012, (*id.* at 28-45, 65-66). On April 23, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 10-27.)

LaValley commenced the present action by filing her complaint on

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

March 21, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 14, 15.)

### III. Contentions

LaValley contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 14 at 11-39.) Specifically, LaValley claims that the ALJ failed to: (1) follow the treating physician rule; (2) consider the combined effects of her arthritis, pain, obesity, and depression; and (3) properly evaluate her credibility. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 15 at 5-10.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 14 at 2-10; Dkt. No. 15 at 2.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a

3

full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Weighing Opinion Evidence

LaValley first argues that the ALJ erred in failing to give greater weight to the opinions of her longtime treating physicians without clear and convincing evidence. (Dkt. No. 14 at 11-20.) Specifically, LaValley claims that the ALJ "baldly" dismissed the opinion of primary care physician Glen Schroyer despite the fact that his opinion was supported by the results of his examinations, the reports of other orthopedic experts, and the radiological examinations. (*Id.* at 19.) Further, LaValley contends that the ALJ relied on those portions of Dr. Schroyer's clinical reports, except his well-supported conclusions, in violation of the treating physician rule. (*Id.*) Finally, LaValley asserts that the ALJ erred in giving insufficient weight to the findings and conclusions of consultative examiners Nader Wassef and Brett Hartman, who concluded that LaValley suffered from obesity, knee

4

pain, and back pain, as well as mental impairments. (*Id.* at 20.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[2] 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

insufficient to lead him to a conclusion of disability." *Id*. (internal quotation marks and citation omitted).

Here, in July and October 2010 treating orthopedist Howard Black noted in his treatment records that LaValley would likely never return to a job that requires prolonged walking or standing due to arthritis in her knees. (Tr. at 254-56, 319-20, 323.) In September 2010, Dr. Black opined that LaValley was "very limited" in her ability to walk and stand, and that these limitations were expected to last for one to three months. (*Id.* at 319-20.)[3] Dr. Black also excused LaValley from work for three months, from August to November 2010. (*Id.* at 321, 323.) The ALJ gave "great weight" to Dr. Black's opinion that LaValley was limited from performing prolonged standing or walking, but not limited in her ability to sit. (*Id.* at 20, 320.) On the other hand, the ALJ gave "some weight" to the opinions of LaValley's primary care physician, Dr. Schroyer. (*Id.* at 21, 299-300, 316-17, 428-29.) In July 2011 and December 2012, Dr. Schroyer opined that, due to arthritis

---

[3] Dr. Black's assessment indicates that he was planning on treating LaValley with Hyalgan injections and possibly a knee replacement. (Tr. at 319-20.) Dr. Black's treatment notes at this time also indicate that he gave LaValley an out of work note for two months "to see how she does" with Hyalgan injections. (*Id.* at 255.) Thereafter, Dr. Black's treatment notes reflect that LaValley did not experience any significant relief from her knee injections. (*Id.* at 254.) In February 2012, LaValley received a right total knee arthroplasty. (*Id.* at 411-15.)

6

in her knees, restless leg syndrome, sleep apnea, and back pain, LaValley was "very limited" in her ability to walk, stand, sit, lift, carry, push, pull, bend, and climb and was, therefore, unable to work even at the sedentary level. (*Id.* at 299-300, 428-29.)

Notably, "an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Indeed, it is for the ALJ to resolve evidentiary conflicts. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). However, "'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Balsamo*, 142 F.3d at 81 (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)). In this case, in explaining his residual functional capacity (RFC) determination[4] the ALJ stated that "[t]he undersigned finds Dr. Black's opinion consistent with [the] above [RFC, t]herefore, the undersigned has accorded Dr. Black great weight in

---

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). Here, the ALJ determined that LaValley retained the RFC to perform the full range of sedentary work. (Tr. at 18.)

assessing the claimant's [RFC]." (Tr. at 20.) In affording only "some weight" to the opinion of Dr. Schroyer, the ALJ explained that his opinion was not supported by the findings in his treatment notes. (*Id.* at 21); *see* 20 C.F.R. § 404.1527(c)(3). The ALJ also explained that "it is not clear that [Drs. Black and Schroyer] were familiar with the definition of 'disability' contained in the Social Security Act and regulations." (Tr. at 22); *see* 20 C.F.R. § 404.1527(c)(6). Thus, the ALJ explained that it was "possible" that Dr. Black was referring solely to LaValley's inability to perform her past work when he opined that she was "totally disabled" for three months, which the ALJ concluded was consistent with his own conclusions. (Tr. at 22, 321-23.)

In addition to the opinions of Drs. Black and Schroyer,[5] the ALJ discussed the minimal clinical findings throughout the record. (*Id.* at 20-22); *see* 20 C.F.R. § 404.1527(c)(4). Specifically, the ALJ noted that consulting physician Wassef found that LaValley had a normal gait and stance, needed no help getting on and off of the examination table, was able to rise from a chair, had full range of motion of her knees and spine,

---

[5] The court notes that the administrative record contains no other medical source opinion as to LaValley's functional capabilities with respect to the physical demands of work.

and straight leg raising was negative. (Tr. at 20, 260-62.)[6] Further, the ALJ noted that, in January 2012, LaValley visited the emergency room for treatment of epigastric pain. (*Id.* at 21, 399-400, 402-03.) At this time, there were no positive clinical findings with regard to LaValley's back or knees. (*Id.* at 402-03.) Thus, the ALJ concluded that the record failed to reveal significant clinical and laboratory findings to support her claim of disability. (*Id.* at 22.)

However, after the ALJ rendered his decision, LaValley submitted additional records to the Appeals Council, including examination results from February 2012 through May 2012 completed by treating physician Honorio Dispo. (*Id.* at 2, 4, 418-25.) Dr. Dispo's findings included palpable pain and spasms at the lumbar spine, pain and swelling at the right knee, impaired gait, slight weakness of the right quadriceps muscle, diminished pinprick sensation at the posterior aspect of both legs, diminished bilateral

---

[6] Dr. Wassef also found that LaValley was unable to stand and walk on her toes, unable to squat, was in discomfort on examination of her right knee, and had bilateral "1+ pitting edema." (Tr. at 259-60.) In addition to his physical examination, Dr. Wassef reviewed x-rays of LaValley's lumbrosacral spine, which revealed grade four spondylolisthesis of L5 on S1 with evidence of bilateral spondylolysis, extensive hypertrpohy of the mid to lower lumbar facet joints, and left greater than right sacroiliac joint osteoarthritis. (*Id.* at 261-62.) Spondylolisthesis is the forward displacement of one vertebra over another, usually due to a developmental defect. *See* Dorland's Illustrated Medical Dictionary, 1563 (28th ed. 1994). Spondylolysis is "dissolution of a vertebra." *Id*. Dr. Wassef diagnosed LaValley with obesity, sleep apnea, right knee pain and arthritis, and lower back pain, but failed to offer an opinion as to the functional limitations caused by these impairments. (Tr. at 260.)

9

ankle jerk, and positive right and left back spurling test. (*Id.* at 419-21.) The Appeals Council did not discuss this new evidence and merely concluded that the records submitted by LaValley "did not provide a basis for changing the [ALJ's] decision." (*Id.* at 2.)

Given the vague nature of Dr. Black's opinion,[7] and the overlooked clinical findings of Dr. Dispo, although it is clear that the ALJ followed the correct legal standard to be applied in analyzing Dr. Schroyer's opinion, it is not at all clear that the ALJ's determination is supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(3)-(6); *Perez*, 77 F.3d at 45 ("When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary."). Thus, the court remands this case for further consideration of LaValley's RFC.

Turning to her mental impairments, the ALJ gave "some weight" to the opinion of Dr. Hartman that LaValley suffers major depressive disorder, moderate, pain disorder associated with a general medical condition, and

---

[7] Dr. Black's opinions do not clearly indicate whether LaValley can perform the standing and walking required by sedentary work. *See* SSR 83-10, 1983 WL 31251, at *5 (1983) (defining sedentary work as that which requires no more than approximately two hours of standing and walking out of an eight-hour workday).

rule out learning disorder, which cause her mild attention problems and moderate difficulty dealing with stress. (Tr. at 16, 269.) Dr. Hartman also concluded that LaValley would likely have difficulty performing a variety of tasks given her physical concerns. (*Id.* at 269.) In finding that LaValley's mental impairments are not severe under the regulations, however, the ALJ noted that she did not allege any difficulty with mental functioning on a report completed for the Social Security Administration, and, instead, reported no problems paying attention, following spoken or written instruction, and getting along with others. (*Id.* at 16, 157, 159.) Further, in making his RFC determination, the ALJ noted that primary care physician Schroyer opined that LaValley suffered no mental health limitations. (*Id.* at 21, 300, 429.) The ALJ also observed that LaValley was able to cook, clean, and care for her personal hygiene with difficulty due to her physical health impairments, watched television, listened to the radio, visited with friends, and used the computer for shopping and socializing. (*Id.* at 19-20, 154, 156-57, 258.) Thus, the ALJ's determination to afford only "some weight" to Dr. Hartman's opinion is legally sound and his conclusion that her mental impairments cause no more than mild limitations of functioning is supported by substantial evidence. (*Id.* at 16-17); *see* 20 C.F.R.

§ 404.1527(c)(2), (4).

B. **Remaining Findings and Conclusions**

Because LaValley's remaining contentions, (Dkt. No. 14 at 20-39), may be impacted by the subsequent proceedings directed by this Order, it would be premature of the court to address them at this juncture.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 29, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court

12